UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT SCHUTZA,<br><br>    Plaintiff,<br><br>  v.<br><br>R&H MISSION GORGE, INC.;<br>HORNDOGS LLC; and DOES 1–10,<br><br>    Defendants. | Case No. 24-cv-0922-BAS-MMP<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS<br>PLAINTIFF'S STATE-LAW CLAIM**<br><br>**(ECF No. 5)** |

    The plaintiff has filed claims under the Americans with Disabilities Act ("ADA") and the California Unruh Civil Rights Act ("Unruh Act") against the defendants for failure to provide compliant accessible parking at their businesses. (ECF No. 1 ("Compl.").) The defendants seek to dismiss Plaintiff's state-law Unruh claim on the grounds the Court should decline to exercise supplemental jurisdiction. (ECF No. 5.) Plaintiff opposes. (ECF No. 7 ("Resp.").) Defendants reply. (ECF No. 8.)

    The Court finds the motion suitable for determination on the papers submitted and without oral argument. Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss. (ECF No. 5.)

## I. BACKGROUND

Scott Schutza ("Plaintiff" or "Schutza") uses a wheelchair for mobility due to paraplegia. (Compl. ¶ 1.) On at least two occasions, Plaintiff dined at the Longhorn Bar & Grill ("the restaurant"), located at 6519 Mission Gorge Rd, San Diego, CA 92120 ("Subject Property"). (*Id.* ¶¶ 4–5, 12.) R&H Mission Gorge, Inc. and Horndogs LLC (collectively, "Defendants") are the owners and operators of the restaurant and Subject Property. (*Id.* ¶ 2.)

Plaintiff contends that during his visits Defendants failed to provide equivalent facilities, privileges, advantages, and accommodations to him as a person with a disability, compared to patrons without disabilities. Specifically, Plaintiff alleges non-compliance with the ADA and California Building Codes concerning accessible parking. (*Id.* ¶ 15.) Plaintiff cites issues with the number of accessible parking spaces, the condition of the ground in and around the spaces, the visibility of the paint demarcating the spaces, the accessibility of the access aisle beside one of the spaces, and the lack of signage denoting the spaces. (*Id.* ¶¶ 18–26.) Plaintiff alleges that these barriers caused him difficulty, discomfort, and embarrassment during his visits to the restaurant and Subject Property. (*Id.* ¶ 28.) The lack of compliant parking spaces and access aisles increased his risk of being blocked in by other vehicles, being hit by a car while transferring to and from his wheelchair, rolling into traffic, or tipping over due to the steep slope. (*Id.* ¶ 29.)

Plaintiff intends to return to the restaurant but is deterred by these access barriers. (*Id.* ¶ 31.) He alleges that Defendants had actual or constructive knowledge of these barriers and intentionally failed to remove them, despite having the financial resources to do so and the barriers being easily removable. (*Id.* ¶¶ 32, 35, 37.) Consequently, Plaintiff claims that Defendants' actions violate the ADA and the Unruh Act. (*Id.* at 9–15.)

## II. LEGAL STANDARD

A district court may exercise supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that form part of the same case or controversy under Article III of the U.S. Constitution." 28 U.S.C. §

1367(a). That a court may exercise supplemental jurisdiction, however, "does not mean that the jurisdiction must be exercised in all cases." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997). Supplemental jurisdiction is ultimately "a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *Id.* Under the supplemental jurisdiction statute, a district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c).

Where a district court invokes section 1367(c)(4)'s "exceptional circumstances" provision, however, it must satisfy a two-part inquiry: (1) the "district court must articulate why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)," *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021) (citation omitted), and (2) "in determining whether there are compelling reasons for declining jurisdiction . . . the court should consider what 'best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine,'" *id.* (quoting *Int'l Coll. of Surgeons*, 522 U.S. at 172–73). To satisfy the "case-specific" inquiry under section 1367(c)(4), the Court "needs to only identify the exceptional circumstances [and compelling reasons] and confirm that they apply to the *particular case* before it." *Vo v. Choi*, 49 F.4th 1167, 1173 (9th Cir. 2022).

### III. ANALYSIS

#### A. The ADA and the Unruh Actblu

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or

operates a place of public accommodation." 42 U.S.C. § 12182(a). Under the ADA, injunctive relief is the only remedy available to a private litigant. *Id.* § 12188(a).

In passing the Unruh Act, however, California "chose a different route" and created "a state law cause of action that relies dispositively on the ADA's substantive rules but that expands the remedies available in a private action." *Arroyo*, 19 F.4th at 1211. Under the Unruh Act, all persons in California, "no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA constitutes a violation of section 51 of the Unruh Act. *Id.* § 51(f). Yet unlike the ADA, the Unruh Act not only provides for injunctive relief, but also allows for recovery of monetary damages for every offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." *Id.* § 52(a).

In 2012 and 2015, California changed the procedural requirements for filing construction-related accessibility claims under the Unruh Act to address the issue of some attorneys "abusing the Unruh Act by demanding 'quick money settlement[s]' from California business owners 'without seeking and obtaining actual repair or correction of the alleged violations on the site.'" *Arroyo*, 19 F.4th at 1206 (citing Act of Sept. 19, 2012, ch. 383, § 24, 2012 Cal. Stat. 3843, 3871). These changes included governing the language permissible in demand letters for construction-related accessibility claims, Cal. Civ. Code § 55.31, and mandating that a notice for such claims be served along with the summons and complaint, Cal. Civ. Code § 55.54, among other protections. Critically, California provided additional procedural safeguards where claims were brought by litigants deemed to be "high-frequency litigants" of construction-related accessibility claims. *See* Cal. Civ. Proc. Code § 425.55. The legislature included these safeguards "so as to ensure that the claims are warranted." *Id.* § 425.55(b). Under the changes, high-frequency litigants are required to pay an additional $1,000 filing fee "if the complaint alleges a construction-related accessibility claim." Cal. Gov't. Code § 70616.5.

Here, Plaintiff has identified himself as someone whom the California courts consider to be a "high-frequency litigant." (ECF No. 7-1 ¶¶ 2–4.)[1] Likewise, he acknowledges that his Complaint alleges a construction-related accessibility claim. (*Id.* ¶ 2.) Plaintiff also seeks injunctive relief as well as damages. (*Id.* ¶ 13; Compl. at 16.) Therefore, if Plaintiff had filed this case in state court, he would be subject to the procedural safeguards put in place by the California legislature. Here, he is not.

### B. Supplemental Jurisdiction over Plaintiff's State-Law Claim

Contrary to Plaintiff's assertions, the question here is not whether Plaintiff has filed an "abusive" complaint, but whether the circumstances and legal footing of this case require this Court to decline to exercise supplemental jurisdiction over Plaintiff's state-law claim. (*See* Resp. at 3.) To determine whether 28 U.S.C. § 1367(c)(4) applies and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim, the Court must conduct the "two-part inquiry" laid out in *Arroyo*. 19 F.4th at 1210.

#### 1. Exceptional Circumstances

First, the Court considers whether exceptional circumstances exist in this case. "Exceptional circumstances" under section 1367(c)(4) include "at the very least . . . highly unusual situations that threaten to have a substantial adverse impact on the core *Gibbs* values of 'economy, convenience, fairness, and comity.'" *Arroyo*, 19 F.4th at 1211 (quoting *Int'l Coll.*, 522 U.S. at 172–73).

The exceptional circumstances here are the same as they were in *Arroyo*. California's requirements for high-frequency litigants of construction-related accessibility claims drove those litigants into federal court and "thwarted the California Legislature's goal of providing damages relief for ADA violations while limiting the financial burdens that California's businesses may face from damages actions." *Frazier v. Ramirez*, No.

---

[1] Plaintiff's counsel asserts that his firm does not qualify as a "high-profile litigant," but cites to no authority where both counsel and plaintiff must be high-profile litigants for the procedural safeguards to apply. (ECF No. 7-2 ¶¶ 2–3.) Accordingly, this additional information does not weigh in the Court's analysis.

2:24-CV-06294-MRA-MAA, 2024 WL 4406814, at *4 (C.D. Cal. Aug. 27, 2024). The Ninth Circuit agreed with the district court's finding in *Arroyo* that the circumstances were exceptional where "the distinctive configuration of California-law rules . . . would be rendered ineffectual if the district court were to exercise supplemental jurisdiction." *Arroyo*, 19 F.4th at 1211.

The circumstances have not now changed. Permitting Schutza to circumvent California's rules by filing in federal court would render those rules completely ineffectual. Therefore, this Court "cannot stray from *Arroyo*'s conclusion that the first prong of the § 1367(c)(4) inquiry is met." *Vo*, 49 F.4th at 1171. Accordingly, this Court finds that exceptional circumstances justify the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim in this action under 28 U.S.C. § 1367(c)(4).

### 2. Compelling Reasons

The Court next considers the second prong of the Section 1367(c)(4) inquiry, whether there are "compelling reasons for declining jurisdiction" in this case "consider[ing] what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine articulated in *Gibbs*." *Arroyo*, 19 F.4th at 1210 (citation omitted).

Here, fairness and comity overwhelmingly weigh in favor of declining supplemental jurisdiction over Plaintiff's Unruh Act claim. In *Vo*, the Ninth Circuit affirmed a district court opinion of similar facts that:

> it would not be fair to the defendants if plaintiffs could bypass the limitations California state law has imposed on Unruh Act claims by simply bringing them in federal court. In fact, allowing federal courts to be an escape hatch for plaintiffs to avoid the heightened pleading requirements would be an affront to the comity between federal courts.

*Vo*, 49 F.4th at 1168–69, 1172 (citation omitted). As Plaintiff writes, "[t]he ADA is a law, not an honor system." (Resp. at 4.) The same can be said for the Unruh Act and the procedural requirements around it. Plaintiff may not avoid such requirements because he and his counsel bring cases "with utmost integrity." (*Id.* at 2.) Here, the Ninth Circuit has

already held that in circumstances such as these the values of fairness and comity weigh heavily in favor of declining supplemental jurisdiction. The intentions behind the action do not factor.

As in *Vo*, this Court has the opportunity here to decline supplemental jurisdiction over the Unruh Act claim "well before [] rul[ing] on the merits of the ADA claim," and therefore the values of economy and convenience also weigh in favor of declining jurisdiction. *Id.* at 1172. In *Vo*, the Ninth Circuit clarified that "[t]he fatal flaw we identified in the *Arroyo* district court's order was that it waited until a 'very late stage' of the litigation to decline supplemental jurisdiction." 49 F.4th at 1171–72. Even though "many of the *Gibbs* values *could have* been furthered by refusing supplemental jurisdiction over the Unruh Act claim in that case, . . . doing so at that late point in the litigation would not actually effectuate any of those values" because it would "merely create duplicative work for the state court." *Id.* at 1172 (citation omitted). Those concerns are not present here. As in *Vo*, the Court's disposition of supplemental jurisdiction over Plaintiff's state-law claim comes "well before" any ruling on the merits of the ADA claim, and therefore "sidesteps the core concern articulated in *Arroyo*." 49 F.4th at 1172.

Accordingly, at this early stage of litigation, the *Gibbs* values are best served by declining supplemental jurisdiction over Plaintiff's Unruh Act claim. Both exceptional circumstances and compelling reasons exist for the Court to exercise its discretion to decline supplemental jurisdiction over Plaintiff's Unruh Act claim.

### IV. CONCLUSION

Finding that this Court cannot in good conscience exercise jurisdiction over Plaintiff's state-law claim does not mean "you do not belong here," as Schutza asserts. (*See* Resp. at 2.) Schutza's ADA claim *does* belong here, and the Court shall retain jurisdiction over it. Rather, the message is: "this claim does not belong here," as Schutza should already be well aware since this Court declined supplemental jurisdiction over a similar Unruh Act claim by Schutza more than seven years ago. *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025 (S.D. Cal. 2017).

For the foregoing reasons, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim. The Court therefore **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** Plaintiff's Unruh Act claim without prejudice. (ECF No. 5.)

**IT IS SO ORDERED.**

**DATED: December 12, 2024**

Hon. Cynthia Bashant
United States District Judge